UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FOX,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ERNEST ZEIGLER,<br><br>　　　　Defendant. | Case No. 1:20-cv-00290-JLT-CDB (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 38)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Michael Fox is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. This action proceeds on Plaintiff's claims of Eighth Amendment medical indifference and medical malpractice under California law against Defendant Ernest Zeigler, R.N. All claims against Dr. Kim have been dismissed. Defendant filed a motion for summary judgment (Doc. 38). Plaintiff filed a response in opposition (Doc. 47), to which Defendant filed a reply (Doc. 48). For the following reasons, the Court recommends that summary judgment be granted in Defendant's favor.

I.　**UNDERLYING FACTS**

　　A.　**Defendant's Statement of Undisputed Facts and Declarations**

In accordance with Local Rule 260(a), Defendant submitted a statement of undisputed facts ("SUF") in support of his motion for summary judgment. (Doc. 38-3.) In support of the SUF, Defendant submits his own declaration (Doc. 38-6) and the declarations of former

defendant, Dr. R. Kim (Doc. 38-5); Deputy Attorney General Derrek J. Lee for the introduction of Plaintiff's deposition transcript and the declaration Brandi Allen-Caldera, Custodian of Records at California State Prison–Corcoran. Plaintiff filed a response to the SUF and request for judicial notice of the medical records he submitted in support of his response. (Doc. 47.) Defendant filed a reply. (Doc. 48.)

At all relevant times, Plaintiff was housed at the Substance Abuse Treatment Facility at Corcoran ("SATF"), and Defendant was a nurse practitioner at SATF. (SUF, Doc. 38-3 at ¶¶ 1–2.)

Plaintiff suffered an arm injury while playing basketball on September 28, 2018, and Plaintiff was prescribed naproxen for his pain. (Def. decl., Doc. 38-6 at ¶¶ 2–3.) Three days later, on October 1, 2018, Plaintiff arrived at the Triage Treatment Area. (SUF, Doc. 38-3 at ¶ 3.) After a consult with Plaintiff, Dr. Kim diagnosed Plaintiff with a broken arm and ordered the immediate application of a splint. (Def. decl., Doc. 38-6 at ¶¶ 2–3.) This did not require review by an orthopedic surgeon, (SUF, Doc. 38-3 at ¶ 3), but Dr. Kim made an urgent request for orthopedic surgery evaluation in case surgery on the arm was necessary. (Kim decl., Doc. 38-5 at ¶ 2.)

The proper manner to stabilize a fracture such as Plaintiff's injury is to place a hard cast on the arm. (*Id.* ¶ 3.) According to Defendant, the plan from the outset was for Plaintiff to remain in the cast, subject to re-evaluation in two weeks, with the expectation that the fracture would take six to eight weeks to heal. (Def. decl., Doc. 38-6 at ¶ 4.) Plaintiff agreed to a treatment plan including casting the arm, which was medically necessary to manage the facture. (*Id.* ¶¶ 2, 5.) Dr. Kim ordered the application of a long arm cast on Plaintiff's arm. (*Id.* ¶¶ 6–7.) Defendant's Progress Notes of October 1, 2018, indicate that Defendant applied a long arm cast to Plaintiff's right arm that day. (Doc. 47 at 9, ex. C.)

On the same day, October 1, 2018, Plaintiff asked for the cast to be cut off because he believed it was too big. (Doc. 38-4 at 18.) He stated that it was interfering with his ability to write and prevented him from completing his schoolwork, and he could not shower, since he is right-handed. (*Id.*) Dr. Kim denied the request for the cast to be removed, citing that there was

2

"no medical reason" for the removal and would not be "in the best interest of the patient." (*Id.*)

On October 19, 2018, during a follow-up appointment, Dr. Kim observed Plaintiff was doing well without complaints or pain, and Plaintiff exhibited a full range of motion of the wrist and elbow with no deformities. (*Id.* ¶ 4.) Dr. Kim determined Plaintiff's injury was stable but not completely healed, and Plaintiff's pain was treated with Tylenol. (*Id.*) He found no evidence indicating that Defendant applied the cast incorrectly or failed to follow his orders. (*Id.*) Plaintiff was scheduled for a follow-up appointment two weeks later with orthopedics to review his most recent x-rays. (*Id.*)

On September 19, 2019, Plaintiff submitted Government Claim No. 19008763, alleging that Defendant failed to follow Dr. Kim's October 1, 2018, orders for splinting. (SUF, Doc. 38-3 at ¶ 13.)

### B.    Plaintiff's Response

Plaintiff filed a response to Defendant's SUF. (Doc. 47.) Plaintiff admits that he is not a doctor and has no knowledge about the proper manner to stabilize and arm fracture. (*Id.* ¶ 7.) However, he disputes that the cast was placed on his arm on October 1, 2018. Plaintiff alleges that the cast was not applied to his arm until "10-6-18 @ 23:5 PDT." (*Id.*)

Plaintiff disputes that he exhibited a full range of motion in his wrist and elbow at his follow-up appointment with Dr. Kim on October 19, 2018. (*Id.* ¶ 9.) The cast extended from the the knuckles on his right hand up to his mid-upper arm at a 90° angle. (*Id.* at 9, ex. C.). Therefore, it was "physically impossible to have any kind of movement let alone full range of motion." Additionally, the cast was not removed until November 8, 2018. (*Id.* ¶ 9.)

### C.    Injury

Although not addressed in the summary judgment papers, Plaintiff alleges in the complaint that he has suffered chronic pain and underwent a subsequent surgery to reset the bones and implant a metal plate into his right arm. (Doc. 1 at 3.) Plaintiff submits progress notes from December 12, 2018, indicating that Plaintiff was seen by Dr. Castonguay on October 10, 2018, "where no surgery was recommended. On 11/8 Ortho removed casting and performed another XR." (Doc. 47 at 11.)

3

Defendant does not appear to dispute that Plaintiff subsequently underwent corrective surgery because the bone was not reset and aligned correctly before casting. (Doc. 38-2 at 4 ("Without evidence, Fox contends that the long-arm casting performed by Ziegler caused his ensuing injuries."); at 7 ("Fox also cannot demonstrate that the long-arm casting *caused* any forthcoming injury or complications in 2019. . . . These facts undermine a finding that the long-arm casting by Defendant Ziegler was the cause of Fox's injuries months later.")); (*see* Pl.'s dep., Doc. 38-4 at 9).

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party may accomplish this by presenting evidence that negates an essential element of the non-moving party's case. *Id.* Alternatively, the movant can demonstrate that the non-moving party cannot produce evidence to support an essential element of his claim that must be proven at trial. *Id.*; Fed. R. Civ. P. 56(c)(1)(B). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

If the moving party meets this initial showing, the burden shifts to the non-moving party to establish "specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-moving party cannot simply rely on the pleadings and conclusory allegations in an affidavit. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when deciding a motion for summary judgment, the court must view any inferences drawn from the underlying facts in a light most favorable to the non-moving party. *Id.*

1    The Ninth Circuit has "held consistently that courts should construe liberally motion
2 papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules
3 strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611
4 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still
5 must "identify or submit some competent evidence" to support their claims. *Id.* Plaintiff's
6 verified complaint may serve as an affidavit in opposition to summary judgment if based on
7 personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122,
8 1132 n.14 (9th Cir. 2000) (en banc).

### A. Medical Indifference

10    The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S.
11 Const. amend VIII. The Eighth Amendment protects prisoners from inhumane methods of
12 punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825
13 (1994). "After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes
14 cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Write*, 430
15 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). No matter where
16 prisoners are housed, prison officials have a duty to ensure that prisoners are provided adequate
17 shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d
18 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).

19    To raise an Eighth Amendment claim in the context of medical care, a prisoner must
20 allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to
21 serious medical needs." *Estelle*, 429 U.S. at 106. An Eighth Amendment claim "includes 'both
22 an objective standard—that the deprivation was serious enough to constitute cruel and unusual
23 punishment—and a subjective standard—deliberate indifference.'" *Colwell v. Bannister*, 763
24 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted). To meet the objective element of the
25 standard, a plaintiff must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S.
26 at 104. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result
27 in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*,
28 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted).

The subjective element concerns the defendant's response to a prisoner's serious medical need. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 2992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

To demonstrate deliberate indifference, a plaintiff must show that the course of treatment taken is "medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citations and punctuation omitted); *accord Colwell*, 763 F.3d at 1068. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)).

Under the Eighth Amendment, differences of opinion between a physician and an inmate, or between medical professionals, concerning appropriate medical care does not rise to deliberate indifference. *Hamby*, 821 F.3d at 1092 (quoting *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012)), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference).

The complete denial of medical attention may constitute deliberate indifference. *Toussint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986), *overruled in part on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995). However, a physician need not fail to treat an inmate altogether to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

Delay in providing medical treatment or interference with medical treatment may also constitute deliberate indifference. *Lopez*, 203 F.3d at 1131; *see also Estelle*, 429 U.S. at 104–05 (holding that delay in providing medical care may manifest deliberate indifference). To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay led to further injury. *Lopez*, 203 F.3d at 1131. In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096.

**B.    Medical Malpractice**

Plaintiff also asserts a medical malpractice claim against Defendant. Under California law, the elements for professional negligence, such as medical malpractice, are "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Turpin v. Sortini*, 31 Cal. 3d 220, 229–30 (1982). Physicians specializing in a medical area are "held to that standard of learning and skill normally possessed by such specialists in the same or similar locality under the same or similar

1 circumstances." *Quintal v. Laurel Grove Hosp.*, 62 Cal.2d 154, 159–60 (1964).

2   The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit
3 of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). Even under
4 a liberal construction of the complaint, however, the Court may not supply essential elements of
5 a claim not pleaded by the plaintiff. *Bruns*, 122 F.3d at 1257. The possibility of misconduct and
6 facts merely consistent with liability is insufficient to state a cognizable claim. *Iqbal*, 556 U.S.
7 at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

8   **C.   Government Claims Act**

9   The California Government Claims Act ("CGCA") provides that any party seeking
10 damages from a public entity or public employee must present a claim to the Office of Risk and
11 Insurance Management ("ORIM") within six months of the accrual of the cause of action. Cal.
12 Gov't Code §§ 905, 945.4, 950.2, 911.2(a). Compliance with provisions of the CGCA is a
13 condition precedent to filing any lawsuit for damages against a public employee. Cal. Gov't
14 Code §§ 905, 945.4, 950.2, 911.2(a). Timeliness of the claim is an element of the plaintiff's
15 cause of action. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (Cal. 2007) (citing *State
16 of Cal. v. Super. Ct.* (*Bodde*), 32 Cal. 4th 1234, 1240 (Cal. 2004)).

17 **III.   DISCUSSION**

18   In his motion for summary judgment, Defendant argues that the undisputed facts
19 demonstrate: (A) Defendant followed Dr. Kim's treatment order and provided Plaintiff with
20 constitutionally appropriate medical treatment; (A)(1) Plaintiff's disagreement with the long-arm
21 cast application does not support a claim for damages; (A)(2) Defendant was responsive to
22 Plaintiff's medical needs; (B) Plaintiff cannot show that the care, consistent with the opinion of
23 the treating clinician, was negligent; (C) Defendant is statutorily immune from damages under
24 California Government Code §§ 845.6 and 855.6; (D) Plaintiff did not comply with the
25 Government Claims Act in failing to submit a timely claim against Defendant; (E) Defendant is
26 qualifiedly immune from damages. (Doc. 38-2.)

27   Although Plaintiff filed a response to Defendant's SUF, he did not address the legal
28 arguments raised in the Defendant's memorandum of law. The Court acknowledges Plaintiff's

8

*pro se* status and does not require strict compliance with summary judgment procedures. Even giving a liberal construction to Plaintiff's *pro se* pleadings and viewing any inferences from the underlying facts in a light most favorable to the non-moving party, the evidence submitted by the parties fails to support essential elements of Plaintiff's case. *See Celotex*, 477 U.S. at 322–23. This complete failure of proof concerning essential elements of Plaintiff's case necessarily renders all other facts immaterial. (*Id.*)

In its screening order, the Court narrowed the issues in this case finding Plaintiff stated a cognizable claim for medical indifference: "Plaintiff accuses RN Zeigler of refusing to comply with Dr. Kim's order for a referral to an orthopedic specialist and instead placing a hard cast on Plaintiff's arm without setting it first. This resulted in significant pain, disfigurement, and the need for corrective surgery." (Doc. 10 at 4.) For the same reasons, the Court further found that Plaintiff stated a cognizable medical malpractice claim against Defendant. (*Id.* at 6.)

The evidence demonstrates, however, that Defendant followed Dr. Kim's treatment orders, including splinting and casting, and did not provide treatment that fell below the standard of care. Although there is no dispute that Plaintiff required corrective surgery, Plaintiff cannot prove Defendant's actions or inactions caused his arm to heal improperly.

On October 1, 2018, prior to placement of the splint or cast, Dr. Kim made a request for services for "orthopedic surgery evaluation." (Doc. 47 at 5, ex. A.) The request was given an "urgent" priority and indicated the reason for the request was "[m]id-ulna fracture. Please evaluate and help." (*Id.*) According to Dr. Kim, he made the urgent request for an orthopedic surgery evaluation, "in case surgical repair of the right forearm was necessary." (Kim decl., Doc. 38-5, ¶ 2.) Dr. Kim indicated that he did not intend to make long-arm casting conditional upon the approval of an orthopedic surgeon. (*Id.* ¶ 3.) He opined that Plaintiff's injury required immediate control and stabilization, and the customary manner to stabilize a fracture is with a hard cast. (*Id.*) Based on his review of the treatment records, Dr. Kim determined that Defendant followed his orders to apply the splint immediately and the long arm cast four hours later on October 1, 2018, and there was no indication the cast was improperly applied. (*Id.* ¶¶ 2–4.) In Dr. Kim's professional opinion, Plaintiff received the proper care for his right arm injury. (*Id.* ¶ 4.)

9

At his deposition, Plaintiff testified that, even after the corrective surgery, the arm is still not healed and has a one-inch gap between his bones. (Doc. 38-4 at 7.) Plaintiff stated this was caused "by the bone not being properly aligned prior to being put into a hard or long arm cast, which is why the doctor ordered for a[n] orthopaedic specialist to review my arm before that cast was placed." (*Id.* at 8.) Plaintiff indicated that he has notes from Dr. Castanguay from surgery and from a physical therapist supporting his contention.[1] (*Id* at 13.) However, he acknowledged that the request for orthopaedic surgery evaluation by Dr. Kim does not state that the evaluation had to take place before application of the cast. (*Id.*) Plaintiff testified, "And I'm going to assume that Dr. Kim, by him ordering [orthopaedic specialist review] and if that would have been done, there'd be no need for me to have corrective surgery." (*Id.* at 13.)

Such speculation is insufficient to raise a genuine issue of material fact regarding Defendant's compliance with Dr. Kim's orders. Plaintiff cites to an order regarding a follow-up appointment on October 5, 2018, which Plaintiff misinterprets as a notation that the cast was not applied until October 6, 2018. (Doc. 47 at 7, Ex. B.) The record as a whole clearly establishes that, on October 1, 2018, Defendant placed a splint on Plaintiff's arm immediately and a hard cast later the same day, as ordered by Dr. Kim.

The medical records and declarations of Defendant and Dr. Kim indicate that Defendant followed Dr. Kim's orders when he applied the cast without first having an orthopedic specialist set the bones. Thus, in acting consistent with Dr. Kim's directions, Defendant did not "deny, delay, or intentionally interfere with medical treatment" as required to establish medical indifference. *Lopez*, 203 F.3d at 1131 (quoting *Estelle*, 429 U.S. at 104). In short, there is no showing that Defendant's actions or inactions rose to the level of deliberate indifference and cruel and unusual punishment, or that his casting fell below the professional standard of care. More significantly, the record lacks any indication Defendant's treatment of Plaintiff's arm caused Plaintiff injury that necessitated corrective surgery.

Plaintiff's inability to prove this element renders all other facts or minor factual disputes

---

[1] Plaintiff did not submit as exhibits these notes or medical records related to his 2019 corrective surgery.

10

immaterial. Because the record as a whole could not lead a rational trier of fact to find for Plaintiff, there is no genuine issue for trial. *See Matsushita Elec.*, 475 U.S. at 587. Plaintiff's inability to prove causation also demonstrates Defendant is entitled to judgment as a matter of law on both his constitutional and state law claims.

## IV. CONCLUSION

For the foregoing reasons, it is hereby RECOMMENDED that Defendant's motion for summary judgment (Doc. 38) be GRANTED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be titled, "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 1, 2023**

UNITED STATES MAGISTRATE JUDGE